UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GAYLE MURCHISON                                           CIVIL ACTION

VERSUS                                                              NO. 05-588

ADMINISTRATORS OF THE TULANE                SECTION "C" (5)
EDUCATIONAL FUND

**ORDER AND REASONS**

This matter comes before the Court on motion for summary judgment filed by the defendant, The Administrators of the Tulane Educational Fund ("Tulane").  Having considered the record, the memoranda of counsel and the law, the Court has determined that summary judgment is appropriate for the following reasons.

According to the complaint, the plaintiff, Gayle Murchison ("Murchison"), sues Tulane under Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3(a), for damages allegedly sustained as a result of racial discrimination and retaliation.  Murchison was employed by Tulane as an Assistant Professor in the Newcomb Department of Music of the School of Liberal Arts and Sciences between July 1998 and June 2005, when her employment at Tulane terminated.   She claims that she was wrongfully denied promotion and tenure in March 2004.  Murchison filed a charge of race discrimination and retaliation with the Equal Employment Opportunity Commission in September

1

2004, and a right to sue letter was issued in November 2004.  This suit followed.

The facts upon which Tulane relies are largely undisputed.  In the last ten years, only Murchison, an African-American, and a white male have been considered for tenure in the Music Department, and both were denied tenure.  The promotion to Associate Professor requires "high achievement" in both teaching and published scholarly work and "other service" to the university, and other specific requirements.  (Rec. Doc. 13,  Exhs. 3, 6 & 7).  Problems with Murchison's publishing and teaching performance were discussed in her second and third year reviews in 2000.  (Rec. Doc. 13, Exhs. 8 & 9).  Murchison met on several occasions with Dean Teresa Soufas about the needed improvements.  (Rec. Doc. 13, Exh. 5).   When Murchison's was evaluated for promotion in 2003,  the tenured members of the Music Department unanimously voted against tenure and promotion with one abstention.  (Rec. Doc. 13, Exh. 10).   On March 3, 2004, the LAS Promotion and Tenure Committee recommended disapproval of her evaluation for promotion and tenure.   The Dean and the University Provost concurred with that recommendation . (Rec. Doc. 13, Exh. 11).   In January 2005, Murchison was informed that her request for new consideration with the LAS Promotion and Tenure Committee was denied and that her employment at Tulane would terminate on June 30, 2005.   (Rec. Doc. 13, Exh. 12).

Murchison's opposition does not detract from these undisputed  facts.  She generally argues that neither Department Chair "asserted" to Murchison that her publishing or teaching was deficient, that Murchison was not properly mentored and counseled, and that Murchison was prevented from teaching at least half of her courses in her area of specialty.  (Rec. Doc. 19). Murchison argues for the existence of racial animus in her verbal complaint to the Department of

Labor/"OFCCP" auditor in December 2000 against an Assistant Professor, after she had received her second and third-year reviews.  Specifically, she complained about four instances in which the Assistant Professor used words "black," "Cajun," and "Asian" to describe people, and the fact that he made inaoppropriate comments about "Pollacks" and people from China.  (Rec. Doc. 13, Exhs. 4, Depo. Murchison, pp. 82-85, 371-373 & 13).   She also argues racial animus in the comment of the Department Chair that the suggestion to create a course in "hip hop" music was "wacky,"  and the comment from a senior faculty member against offering a course in "soul" music.  Murchison argues that outside evaluators were not allowed sufficient time to complete their review of Murchison's work.  Finally, Murchison challenges the credentials of "non-academics" who voted on her application because "[a] doctorate in composition is not the equivalent to a doctorate of philosophy," the latter of which Murchison holds.  "She is a composer, not a musicologist, ethnomusicologist, or theorist."  (Rec. Doc. 19, p. 4.).

**Summary judgment**

A district court can grant a motion for summary judgment only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c).  When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986).  The court must find "[a] factual dispute ... [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party ... [and a] fact ... [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." Beck v. Somerset Technologies, Inc., 882 F.2d 993, 996 (5th Cir. 1989) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing Celotex, 477 U.S. at 322-24). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. See Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50.

**Racial discrimination**

Title VII prohibits an employer from "failing or refusing to hire or ... [from] discharging, or otherwise discriminating against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  A plaintiff bears the initial burden to prove a *prima facie* case of discrimination by a preponderance of the evidence. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

The plaintiff may establish a case of *prima facie* discrimination by showing: (1) that he belongs to a protected class; (2) that he was qualified for the position sought; (3) that he was not promoted; and (4) that the employer promoted a person not in plaintiff's protected class or, in cases of employment discipline, others similarly situated were more favorably treated.  Johnson v.

Louisiana, 351 F.3d 616, 621 n.6 (5th Cir. 2003) (quoting McDonnell Douglas, 411 U.S. at 802); Laxton v. Gap Inc., 333 F.3d 572, 579 fn1 (5th Cir. 2003); Blow v. City of San Antonio, Texas, 236 F.3d 293, 296 (5th Cir. 2001).  If the plaintiff establishes a *prima facie* case of discrimination, the burden then shifts to the defendant to produce evidence that "the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason.' " St. Mary's Honor Center. v. Hicks, 509 U.S. 502, 506-07 (1993).  The defendant must state, "through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that the unlawful discrimination was not the cause of the employment action." Id. at 507 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254- 55 (1981)) (emphasis original).

If the defendant articulates such a reason, the focus then shifts to the ultimate question: whether the plaintiff can prove that the defendant intentionally discriminated against the plaintiff. The plaintiff may show intentional discrimination by direct or circumstantial evidence of discriminatory intent.  Grimes v. Texas Dept. Of Mental Health & Mental Retardation, 102 F.3d 137, 140-41 (5th Cir. 1996).  The plaintiff may attempt to overcome the employer's proffered nondiscriminatory reason by providing evidence that the employer's legitimate, nondiscriminatory reason is merely pretextual. St. Mary's, 509 U.S. at 511. The plaintiff "retains the ultimate burden of persuasion throughout the case." Faruki v. Parsons S.I.P., Inc., 123 F.3d 315, 319 (5th Cir. 1997) (citing Burdine, 450 U.S. at 253).  A plaintiff can meet her or his burden of demonstrating pretext and thereby establish a jury issue to avoid summary judgment or judgment as a matter of law "if the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that race

was a determinative factor in the actions of which plaintiff complains." Vadie v. Mississippi State University, 218 F.3d 365, 374, fn 23 (5th Cir. 2000) (explaining that this analysis first formulated in Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 994 (5th Cir.1996), survives the Supreme Court's abrogation of Rhodes in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)).  A *prima facie* case and sufficient evidence of pretext would permit a court or jury to find unlawful discrimination, without additional independent evidence of discrimination, though such a showing will not always be adequate to sustain a jury's finding of liability.  Reeves, 530 U.S. at 142-49.

Here, Murchison argues that two letters of recommendation from outside evaluators were positive and meet the qualification element of McDonnell and that, as a result, Tulane's proffered reason for denying tenure and terminating Murchison was not credible and pretextual.  She alternatively argues that Tulane failed to clearly criticize and counsel her because of racial motive, focusing on the failure of either of her department chairs to relate dissatisfaction or "confront" Murchison.  (Rec. Doc. 19, p. 12).  "Apparently, the Music Department tenured faculty believed Dr. Murchison's work was poor, yet neither of her supervisors (chairs), made her aware of this fact." (Rec. Doc. 19, p. 15).

Murchison's arguments fall short of creating a genuine issue of material fact for purposes of summary judgment.  Her record at Tulane is replete with reports of underperformance, counseling, and opportunity to improve.  There is no dispute that Murchison was made aware of these circumstances in a timely manner before the decision not to promote and to terminate her was made, regardless of any inaction on the part of the two department chairs who were not responsible for making that decision.

In addition, direct or indirect evidence of pretext or racial animus is lacking. Assuming that the comments made the subject of Murchison's December 2000 complaints were actually made by the Assistant Professor, the comments do not constitute evidence probative of discriminatory intent because they do not relate to the plaintiff's protected status, they are not proximate in time to the employment decision at issue, they are not made by an individual with authority over the employment decision at issue, and are not related to the employment decision.[1] Wallace v. Methodist Hospital System, 271 F.3d 212, 222 (5th Cir. 2001). The Court further finds that the plaintiff's criticisms of offering "hip hop" or "soul" music courses do not reflect a racial animus.

**Retaliation**

Under 42 U.S.C. § 2000e-3(a) employers are prohibited from discriminating against an employee "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." In order to make out a *prima facie* case of retaliation, the plaintiff must prove that: (1) she was engaged in protected activity; (2) the defendant took adverse employment action against him; and (3) a causal connection exists between that protected activity and the adverse employment action. See Mattern v. Eastman Kodak Co., 104 F.3d 702, 705 (5th Cir. 1997).

Here, the Court has been presented with no evidence of a causal connection between the plaintiff's verbal complaint about the Assistant Professor's comments in December 2000 and any

---

[1] The fact that this Assistant Professor participated in the department meeting and signed the November 2003 letter of evaluation does not detract from the fact that he abstained from voting. (Rec. Doc. 13, Exh. 10).

7

adverse action. No proof has been presented that any other person was aware of the December 2000 complaint at any relevant time, and the subject Assistant Professor abstained from voting. Chaney v. New Orelans Public Facility Management Inc., 179 F.3d 164 (5th Cir. 1999). Again, the plaintiff's complaints about the isolated comments made by fellow faculty members fall short of being probative of racial animus. Wallace, 271 F.3d at 222.

The Court acknowledges that the plaintiff has received a grant from the National Endowment for the Humanities after she learned of Tulane's adverse decision, and that she has successfully relocated to William and Mary College in Virginia. These accomplishments do not detract from the fact that Tulane has presented hard and undisputed facts that, at an earlier time in her career while at Tulane, her performance did not meet Tulane's published standards for promotion and tenure, and that Tulane communicated what it considered critical shortcomings to her in a fair and non-discriminatory manner.

Accordingly,

IT IS ORDERED that the motion for summary judgment filed by the defendant, The Administrators of the Tulane Educational Fund is GRANTED.

New Orleans, Louisiana, this 16th day of March, 2006.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE